1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7   JENNIFER SORRELL,                    Case No.  13-cv-04874-SI

             Plaintiff,
8
                                         **ORDER GRANTING PLAINTIFF'S**
9        v.                              **MOTION FOR SUMMARY JUDGMENT**
                                         **AND DENYING DEFENDANT'S**
10  CAROLYN W. COLVIN,                    **MOTION FOR SUMMARY JUDGMENT**
    Commissioner of Social Security,
11
             Defendant.
12

13          The parties filed cross-motions for summary judgment in this Social Security appeal.

14  Having considered the parties' papers and the administrative record, the Court hereby GRANTS

15  plaintiff's motion for summary judgment, and DENIES defendant's motion for summary

16  judgment.  The matter is REMANDED for an immediate award of benefits.

17

18                              **BACKGROUND**

19          In December 2010, Plaintiff applied for Disability Insurance and Supplemental Security

20  Income Benefits under Titles II and XVI of the Social Security Act.[1]  Her applications were

21  denied originally and upon reconsideration.  Administrative Record ("AR") at 160, 166, 172.

22  Plaintiff's applications were then heard by Administrative Law Judge ("ALJ") Judson Scott, who

23  denied her claims in a decision on May 25, 2012.  *Id*. at 22.

24          By the time of the administrative hearing, plaintiff Jennifer Sorrell was a thirty-one year

25  old woman with at least a high school education.  *Id*. at 33.  Her past work experience included

26

27  _____
    [1] Plaintiff previously applied for Disability Insurance Benefits in December 2006 and October
28  2007.  AR 183-187.  There is no indication from the record that either application reached a
    decision.

United States District Court
Northern District of California

employment as a cell phone technician, assistant retail manager, and financial institution customer service. *Id.* at 32. She had not engaged in substantial gainful activity since May 10, 2006. *Id.* at 27. Plaintiff asserted that she was disabled due to fibromyalgia, chronic pain, and chronic migraines. *Id.* at 135, 146.

The Appeals Council granted two requests from plaintiff for more time before acting on plaintiff's case. AR 8, 13. The Appeals Council finally denied review of plaintiff's claims on August 30, 2013, rendering ALJ Scott's denial the final decision of the Commissioner. AR 1-4. On October 21, 2013, Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt No. 1. Plaintiff sought four extensions of time to file her motion for summary judgment, which the Court granted. Dkt. Nos. 16, 18, 20, 22. The Court also granted motions extending the Commissioner's deadline to file her cross-motion for summary judgment and granting leave to file her cross-motion one day late. Dkt. Nos. 28, 30. Plaintiff sought three extensions of time to file her reply, which the Court similarly granted. Dkt. Nos. 30, 32, 34. Plaintiff's reply brief was filed February 16, 2015. Dkt. No. 35.

**ALJ'S DECISION**

On May 25, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act. In determining plaintiff's disability status, the ALJ applied the five-step disability analysis in accordance with 20 C.F.R. § 416.920(a)(4). AR at 27-34. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 10, 2006, the alleged onset date of plaintiff's disability. *Id.* at 27. At step two, the ALJ found that plaintiff suffered severe impairment from chronic pain disorder/fibromyalgia, chronic migraine symptoms of uncertain cause, and obesity. *Id.* at 28. At step three, the ALJ found that the plaintiff's impairments did not meet or equal the severity of any impairment in the Listing of Impairments. *Id.* at 30.

Before proceeding to step four, the ALJ examined plaintiff's residual functional capacity ("RFC"). *Id.* In assessing plaintiff's RFC, the ALJ evaluated plaintiff's testimony, the medical evidence, and weighed the opinions of plaintiff's treating and examining physicians, and the non-

examining medical expert ("ME").  *Id.* at 30-32.  Specifically, the ALJ gave little weight to the opinions of plaintiff's treating physicians, Drs. Cheng and Brody.  *Id.* at 32.  He also gave little weight to the opinion of examining physician, Dr. McCall.  *Id.*  The ALJ gave great weight only to the opinion of Dr. Morse, a non-examining ME.  *Id.* at 31.  As to plaintiff's own testimony, the ALJ determined that the plaintiff's medically determinable impairments ("MDI") could reasonably be expected to cause the alleged symptoms, but found that plaintiff's testimony regarding the symptoms' severity was not credible.  *Id.* at 30-31.

In light of the above assessment, the ALJ found plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations: "lift/carry 10 pounds frequently, 20 pounds occasionally; sit 6 hours in an 8-hour day; stand/walk 6 hours in an 8-hour day with usual breaks; no exposure to noise above normal noise levels of general retail or office settings, whichever is noisier; no work around hazardous moving machinery, unprotected heights, or heavy industrial vibrations."  *Id.* at 30.

Continuing to step four, the ALJ relied on testimony from a vocational expert ("VE") to find that plaintiff's impairments did not prevent plaintiff from returning to her past work as a phone maintenance mechanic, financial institution customer service representative, and retail manager.  *Id.* at 32.  At step five, the ALJ also relied on testimony from the VE to find that

---

[2] 20 C.F.R. § 404.1567 provides that the term "light work" has the meaning given to it in the Dictionary of Occupational Titles (DOT).  The DOT defines "light work" as:

> Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Dictionary of Occupational Titles § 822.281-018 (1991).

plaintiff could perform the "requirements of representative occupations" such as "route clerk," and "information clerk." *Id.* at 33.  Because the ALJ found that plaintiff was able to make a successful adjustment to these jobs that "exist in significant numbers in the national economy," he determined that a finding of "not disabled" was appropriate. *Id.* at 34.

## LEGAL STANDARD

### I.        Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner.  42 U.S.C. § 405(g) (2001).  Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review.   20 C.F.R. § 416.1481 (2001).   The Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.  42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001).  The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole.  *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).   Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (2012) (internal quotations omitted).   To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098.   "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### II.       Disability Benefits

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to

4

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 1382c(a)(3)(A)-(B).  The ALJ evaluates disability cases using a five-step evaluation process established by the Social Security Administration.  20 C.F.R. § 404.1520; *Ludwig v. Astrue*, 681 F.3d 1047, 1048 n.1 (9th Cir. 2012).

In the first step, the claimant must establish that he or she is not engaged in substantial gainful activity.  Substantial gainful activity is any work that involves significant mental or physical activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  If the ALJ finds that the claimant has engaged in substantial gainful activity, the claimant is not disabled; however, if the ALJ finds that the claimant has not done so, the ALJ will proceed to step two.

In the second step, the ALJ must determine whether the claimant has an impairment or combination of impairments that is preventing him or her from performing substantial gainful activity.  *Id.* § 404.1520(a)(4)(I)-(ii).  In order for an impairment to be severe, it must significantly limit an individual's ability to perform basic work activities.  An impairment must have lasted or be expected to last twelve months in order to be considered severe.  *Id.* § 404.1509.  If the ALJ does not find the claimant's impairment or combination of impairments to be severe at this stage, the claimant is not disabled.  If the ALJ determines that the claimant's impairment or combination of impairments is severe, the ALJ will proceed to step three.

In the third step, the claimant must establish that his or her impairment meets or equals an impairment included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* § 404.1520(a)(4)(iii).  The claimant is disabled if his or her impairment meets or medically equals the criteria of a listed impairment.  *Garrison v. Colvin*, 759 F.3d 995, 1010-11 (9th Cir. 2014).  If the claimant's impairment does not meet or equal the criteria of a Listing, the evaluation continues.  20 C.F.R. § 404.1520(a)(4)(iv).

Before reaching the fourth step, the ALJ must determine the claimant's RFC.  *Id.*

United States District Court
Northern District of California

5

§ 416.920(e).  The RFC measures the claimant's ability to meet the physical, mental, sensory, and other requirements of work despite his or her limitations.  *Id.* § 416.945(a)(4).  To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to work.  The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record.  *Id.* § 416.929(a).  The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability.  *Id.*  In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms.  *Id.*  When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her.  *Id.*  The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements.  *Id.* § 416.929(c)(2).  The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms.  *Id.* § 416.929(c)(3)(I)-(vi).

At the fourth step, the ALJ must determine whether, in light of the claimant's RFC, he or she can perform previous work.  *Id.* § 404.1520(e).  If the ALJ determines that the claimant has such capacity, the claimant is not disabled.  If the claimant cannot perform past relevant work or has no past relevant work, the ALJ proceeds to the fifth step.

The burden of proof is on the claimant in the first four steps; if he or she fails to meet the burden in steps one, two, three, or four, the claimant is "not disabled."  *Garrison*, 759 F.3d at 1011.  The burden shifts to the Commissioner in step five.  In the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant is able to do any other work, and also must determine whether there are a significant number of these jobs in

the national economy.   20 C.F.R. § 404.1520(a)(4)(v); *Garrison*, 759 F.3d at 1011.   If the Commissioner fails to establish that there are a sufficient number of jobs available that the claimant can perform, the claimant is "disabled."   *Id*.   If the Commissioner shows that the claimant can make an adjustment to other work in the national economy, the claimant is not disabled.   *Id*.

# DISCUSSION

Plaintiff argues that the ALJ erred in determining her RFC, and in applying that RFC at steps four and five.   First, she alleges that the ALJ erred in assigning little weight to her treating physicians' and examining physician's opinions by failing to provide specific and legitimate reasons based on substantial evidence in the record.   Second, she contends the ALJ erred in discrediting plaintiff's testimony by failing to provide specific, clear and convincing reasons based on substantial evidence in the record.   Third, plaintiff contends that the ALJ's findings, at step four that plaintiff could perform her past work and at step five that plaintiff could perform other work, are not supported by substantial evidence.   Plaintiff requests the Court to remand the case for an immediate award of benefits.   The Commissioner contends that substantial evidence supported all of the ALJ's findings and conclusions.   Further the Commissioner contends that if the Court finds error, it should remand to the agency for further review.   Def.'s Cross-Mot. at 14.

The Court will consider each of plaintiff's contentions in turn.

## I.     Discredited Medical Opinions

In this Circuit courts distinguish among the opinions of three types of physicians:   (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant, but do not treat her; and (3) non-examining physicians who neither examine, nor treat the claimant.   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician should be given greater weight than that of an examining or non-examining physician.   *Id.*   Similarly, an examining physician's opinion usually should be given more weight than that of a physician who has not examined the claimant.   *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

United States District Court
Northern District of California

7

The ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician.  *Lester*, 81 F.3d at 830.  Even where an examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record.  *Garrison*, 759 F.3d at 1012; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).[3]  "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'"  *Id.* (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

The "substantial evidence" standard requires an ALJ to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e] findings."  *Reddick*, 157 F.3d at 725.  Conclusory statements by the ALJ are insufficient; she "must set forth her own interpretations and explain why they, rather than the doctors', are correct."  *Id.*  An ALJ errs if she "does not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one medical opinion over another[.]"  *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

For the reasons that follow, the Court finds that the ALJ committed error by not sufficiently supporting the weight given to the medical opinions and RFC assessments of Drs. Cheng, Brody, and McCall.

**A.     Treating Physician Dr. Cheng**

At issue first is whether the ALJ erred in assigning Dr. Cheng's opinion little weight.  Dr. Cheng treated plaintiff regularly and on numerous occasions from 2007 until the ALJ's hearing. Dr. Cheng filled out an RFC questionnaire indicating that plaintiff suffered from chronic pain,

---

[3]  Social Security regulations provide that, when a treating source's opinions are not given controlling weight, an ALJ must apply the factors in 20 C.F.R. 404.1527(c)(2)(i-ii) (length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship) and (c)(3-6) ("supportability," consistency, specialization, and other factors that tend to support or contradict the opinion) in determining how much weight to give each opinion. *Garrison*, 759 F.3d at 1012, n.11.

United States District Court
Northern District of California

multiple tender points, chronic fatigue, muscle weakness, frequent severe headaches, and other conditions which rendered her unable to work more than six hours in a day, and necessitated ten minute breaks every thirty minutes.  AR at 647-652.  Dr. Cheng's report stated that despite a reduced workday, plaintiff would be absent at least four days a month.  *Id.* at 652.  Dr. Cheng re-affirmed this assessment in a supplemental form on April 5, 2012.  *Id*. at 746.  The ALJ assigned great weight to the ME's opinion that contradicted Dr. Cheng's assessment of plaintiff's pain and RFC.  *Id*. at 31.

    Because Dr. Cheng was a treating physician whose opinion was contradicted by the ME, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject his opinion.  *Garrison*, 759 F.3d at 1012.  The ALJ also "must set forth her own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.  Although Dr. Cheng has been plaintiff's treating physician since 2007, the ALJ accorded his opinions "little weight."  AR 32.  The ALJ cited two reasons: that "Dr. Cheng's opinion is not consistent with the objective medical evidence of record, which indicates a large functional component to claimant's symptoms," and that "he is not a rheumatologist, a specialist with more expertise with fibromyalgia and chronic pain syndrome."  *Id*.

    The first reason contains no explanation of how Dr. Cheng's opinion is inconsistent with a "the objective medical evidence or record," or what is meant by the "large functional component to claimant's symptoms."  The ALJ failed to acknowledge that no other treating or examining physician disagreed with Dr. Cheng's assessments.  *See Garrison*, 759 F.3d at 1013.  If the ALJ was effectively requiring that Dr. Cheng point to objective medical evidence in this fibromyalgia case, such requirement was improper.  The Ninth Circuit has previously held that an ALJ errs by "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594.

    The Court also finds the ALJ's second reason is not a specific and legitimate reason based on substantial evidence in the record.  By regulation, the Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527.  Neither Dr. Cheng nor

United States District Court
Northern District of California

Dr. Morse is a rheumatologist or a specialist with more expertise with fibromyalgia and chronic pain syndrome, yet the ALJ gave Dr. Cheng's opinion little weight and Dr. Morse's opinion great weight.[4]   The ALJ also failed to consider that Dr. Cheng consulted with a rheumatologist, examining physician Dr. Birnbaum, who issued opinions that plaintiff's symptoms were "consistent with fibromyalgia." AR 634, 635.   The Ninth Circuit has noted "[t]he treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); *see, e.g.*, *Coelho v. Colvin*, 2014 WL 5107058 at *10 (N.D. Cal. Oct. 10, 2014) (fact that treating physician was not a specialist was not a specific or legitimate reason to assign no weight to the treating physician's opinion).   Here, the ALJ failed to acknowledge Dr. Cheng's integration of Dr. Birnbaum's reports that confirmed and strengthened plaintiff's diagnoses of fibromyalgia and chronic pain.[5]

The ALJ failed to provide any specific legitimate reason based on substantial evidence in the record to discredit Dr. Cheng's opinion.[6]   Thus, the ALJ erred in giving little weight to Dr. Cheng's opinion and RFC assessment.

---

[4] Plaintiff also argues that the ALJ failed to follow the Commissioner's "Hearings, Appeals, and Litigation Law Manual" ("HALLEX") guidance that "the ALJ or designee must select the ME whose expertise is most appropriate to the claimant's diagnosed impairment(s)." HALLEX I-2-5-36, 1994 WL 637371, at *1. Although plaintiff's observation may be true, "[a]s HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

[5] In contrast, Dr. Morse did not consult with a rheumatologist or any appropriate specialist.

[6] The Commissioner now contends that the ALJ also found that Dr. Cheng's opinion on carpal tunnel syndrome was properly rejected because it had no evidentiary support in the record. Def.'s Cross-Mot. at 9-10. The ALJ did not cite this among his reasons for assigning little weight to Dr. Cheng's opinion. AR 32. The Court will not consider this or any other contention now offered by the Commissioner that was not discussed by the ALJ. *See Connett v. Barnhart*, 340 F.3d 871, 974 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

United States District Court
Northern District of California

### B.   Treating Physician Dr. Brody

Plaintiff also contends that the ALJ erred in assigning little weight to the opinion of Dr. Brody, a chronic pain specialist who treated plaintiff on three occasions, and diagnosed her with fibromyalgia, chronic migraine headaches and other conditions.  *Id.* at 743.  His medical assessment of functioning form stated that plaintiff's capacity to sit, stand and walk was limited to no more than twenty minutes at a time, that she would need to work reduced hours (a seven hour day or less) at least five times a month, and that she would be absent at least five entire days each month.  *Id.* at 744.  Although the ALJ noted that Dr. Brody "is a pain specialist" and "is treating the claimant," he gave little weight to Dr. Brody's opinion for three reasons: (1) Dr. Brody only saw plaintiff three times, (2) he did not appear to physically examine plaintiff two of those times, and (3) he appeared to adopt claimant's subjective complaints without evaluation of their merit or correspondence to actual physical findings, despite noting plaintiff's "incongruent affect" when describing her pain.  AR 32.  The Court finds none of these is a specific and legitimate reason based on substantial evidence in the record.

It is true that an ALJ may properly consider the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician when assessing a treating physician's medical opinion.  *See* 20 C.F.R. § 416.927(c)(2)(i).  However, courts in this district have previously found that it is inconsistent and not legitimate to discredit one opinion based on a paucity of examinations, but then assign great weight to another opinion based on the same or even fewer examinations.  *See, e.g.*, *Coelho v. Colvin*, 2014 WL 5107058, at *12 (N.D. Cal. Oct. 10, 2014) (not specific and legitimate to reject opinion based on one examination in favor of other opinions based on same number of examinations); *Walters v. Colvin*, 2014 WL 523470, at *5 (N.D. Cal. Feb. 6, 2014) ("That the treating physician only saw Plaintiff five times is not a sufficient reason to favor the state physicians who did not see her.").  In this case Dr. Brody saw plaintiff three times and physically examined plaintiff at least once, all more than the ME Dr. Morse.  That Dr. Brody only saw plaintiff a few times "is a not sufficient reason to favor" the ME who did not see her at all.  *See Walters*, 2014 WL 523470, at *5.  The ALJ's first two reasons are not specific and legitimate.

In discrediting Dr. Brody's opinion for adopting plaintiff's subjective complaints, the ALJ failed to recognize that fibromyalgia is "diagnosed entirely on the basis of patients' reports of pain and other symptoms."[7]   *Benecke,* 379 F.3d at 590 (9th Cir. 2004).   There are currently no laboratory tests to confirm fibromyalgia.  *Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 872 (9th Cir. 2004).  By requiring Dr. Brody to match plaintiff's subjective complaints to physical findings, the ALJ "erred by effectively requir[ing] 'objective' evidence for a disease that eludes such measurement."  *Benecke*, 379 F.3d at 594.

Because the ALJ did not provide specific and legitimate reasons based on substantial evidence in the record, the ALJ erred in failing to give adequate weight to treating physician Dr. Brody's opinion and assessment of functioning.

### C.      Examining Physician Dr. McCall

As with the opinion of the treating physicians, the ALJ assigned little weight to Dr. McCall, an examining physician with the San Francisco Department of Human Services.   Dr. McCall reviewed medical records and concluded that plaintiff likely suffered from "a myofascial pain syndrome such as fibromyalgia," in addition to chronic headaches, obesity, and other conditions.  AR at 645.  Dr. McCall issued an assessment of functioning that plaintiff could sit for up to six hours provided she be allowed to change positions after any consecutive forty-five minutes of sitting, and also stated plaintiff would have "difficulty maintaining any job requiring her to work eight hours per day, five days per week," noting that due to her symptoms of fatigue and pain, she would need to take off a few days of work each month.  *Id*. at 646.

The ALJ assigned Dr. McCall little weight for two reasons.   First, Dr. McCall only

---

[7] The ALJ stated at the hearing,

> "Objective symptomology which does not have an objective basis is worthless….If there is no medically determinable objective basis which underlies the subjective impairments, the rules say they don't count.  You cannot establish disability based on subjective information only. I'm not interested in subjective information."

AR 101-102.

"evaluated the claimant on a one-time basis."[8]  AR 32.  This reason is insufficient.  Another court in this district previously found that "by definition, an examining physician will have often evaluated a claimant only one time," and thus allowing the ALJ to discredit opinions on that basis "would have the result of discrediting examining physician opinions practically as a matter of definition."  *Williams v. Colvin*, 24 F.Supp. 3d 901, 914 (N.D. Cal. 2014).  Other district courts have found the fact a physician examined a claimant only once is not a specific and legitimate reason to reject the opinion.  *See Belman v. Colvin*, 2014 WL 5781132, at *6 (C.D. Cal. Nov. 6, 2014) (finding pretense where the ALJ assigned little weight to examining physician opinion based on one examination, but assigned great weight to two physicians who did not examine plaintiff at all); *see also Sorg v. Astrue*, 2009 WL 4885184, at *18 (W.D. Wash. Dec. 16, 2009) (noting that ALJ and Commissioner can "properly rely on the findings and opinions of an examining medical source who has seen and evaluated a claimant only one time").  Here, the ALJ assigned little weight to Dr. McCall, who examined the plaintiff twice, while assigning great weight to Dr. Morse, who did not even examine the plaintiff.  The Court finds evaluating the plaintiff only once is not a specific and legitimate reason to discredit examining physician Dr. McCall's opinion.

Second, the ALJ stated Dr. McCall's opinion was "not consistent with the overall evidence of record."  AR at 32.  However, "to say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citing *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988).  Here the ALJ did not even attempt to offer any specific reasons why Dr. McCall's opinion was not consistent with the overall evidence.  The Court finds that the ALJ erred in according examining physician Dr. McCall's opinion and functioning assessment "little weight."

Because the ALJ failed to provide specific and legitimate reasons based on substantial

---

[8] The record indicates that Dr. McCall in fact examined the plaintiff twice.  AR 639.

United States District Court
Northern District of California

evidence in the record, he improperly discredited the opinions of treating physicians Dr. Cheng and Dr. Brody, and examining physician Dr. McCall in making his RFC determination.[9]

## II.     Plaintiff's Discredited Testimony

Plaintiff contends that the ALJ improperly rejected her testimony as to pain and symptoms. Plaintiff's Motion (Pl.'s Mot.) at 24; Reply at 8.  An ALJ must engage in a two-step analysis to evaluate the credibility of a claimant regarding subjective symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted).  "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).[10]  "The clear and convincing standard is the most demanding required in Social Security cases."  *Garrison*, 759 F.3d at 1014-1015 (citation omitted).

The ALJ "may find the claimant's allegations of severity to be not credible" but "must specifically make findings which support this conclusion."  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a

---

[9] Plaintiff also argues that the ALJ erred in assigning little weight to LCSW Carol Mills' opinion. Carol Mills was plaintiff's therapist who treated plaintiff's symptoms of depression, anxiety, and isolating behavior.  Plaintiff did not claim MDIs based on mental health diagnoses, nor did the ALJ find severe MDIs based on mental health diagnoses.  Carol Mills' opinion is not necessary to resolve the issues in this case.  Similarly, Dr. Tobias' opinion on mental limitations is not necessary to resolve the issues.  The Court will not address their opinions here.

[10] The Commissioner argues that the clear and convincing standard is a "judicially-created standard [which] exceeds the requirements set forth by Congress and by the Commissioner at the behest of Congress and would appear to be improper."  Def.'s Cross-Mot at 12.  However, the Ninth Circuit has recently upheld the "clear and convincing" standard.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

United States District Court
Northern District of California

reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345-46 (internal quotation marks and citation omitted).  The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

At the first step, the ALJ found that plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms."  AR 31.  The ALJ cited no evidence of malingering.  Moving to the second step, the ALJ listed several reasons for finding plaintiff's testimony "not credible to the extent [it is] inconsistent with the above residual functional capacity assessment," none of which the Court finds specific, clear and convincing.

First, the ALJ noted that ME Dr. Morse "noted claimant's pain is out of proportion to the objective findings in the record," and "claimant's medical record contains no underlying objective basis for her complaints." [11]  AR 31.  At the second step of evaluating a claimant's credibility it is inappropriate to discredit claimant's testimony "to subjective symptoms merely because they are unsupported by objective evidence."  *Lester*, 81 F.3d. at 834.  And especially for a disease like

---

[11] In so emphasizing, the ME appeared to completely discount fibromyalgia as a disease, describing it as:

> "a wastebasket diagnosis that cannot be proved by imaging, laboratory or physical findings….[M]y medical opinion is that there does not exist any other diagnoses in this record other than what some physicians refer to as fibromyalgia…In my opinion, it does not add up. I'm an evidence-based doctor. In some physician's opinion apparently, it does. I want to be clear for the Court. In my opinion, I do not believe that the evidence in this record explains any of her pains and her spasms. I believe they're out of proportion to the objective finding in the record….My understanding is that rheumatologists are the only individuals or groups of individuals that have entertained this diagnosis and perhaps psychiatrists."

AR 116-117.  This opinion is contrary to Social Security Rules that state fibromyalgia is a medically diagnosable impairment, and lists what criteria can establish impairment.  *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

United States District Court
Northern District of California

fibromyalgia that is diagnosed in the absence of objective evidence, an ALJ "err[s] by effectively requir[ing] 'objective' evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594.  Here the ALJ improperly required objective evidence to support plaintiff's pain testimony and erred by relying on a lack of objective evidence to find plaintiff's testimony not credible.

Next the ALJ found that that plaintiff "failed to cooperate in her prescribed treatment" by "show[ing] up too late to be seen for her physical therapy appointment" and "also failed numerous physical therapy appointments in 2001."  AR 31.  Plaintiff contends that she was late to some appointments and missed some appointments because of her pain.  Pl.'s Mot. at 27.  The Social Security regulations require that the Commissioner "consider [plaintiff's] physical, mental, educational, and linguistic limitations…when determining if [plaintiff] ha[s] an acceptable reason for failure to follow prescribed treatment."  20 C.F.R. § 404.1530.  The Ninth Circuit has previously found that pain is such an acceptable reason, where a plaintiff failed to attend occupational therapy sessions because the plaintiff could not sit for more than a few minutes at a time and was constantly in pain.  *See Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984).  Here, the ALJ failed to take into account plaintiff's physical limitations, caused by her pain, in assessing whether she had an acceptable reason to miss some physical therapy sessions.  Every medical report in this record notes plaintiff's complaints of severe and persistent pain and difficulty walking.  No treating or examining physician anywhere expressed the opinion that plaintiff was in any way malingering.  The Court finds the ALJ failed to consider plaintiff's acceptable reason for missing some physical therapy, and plaintiff's absence from some physical therapy appointments is not a clear and convincing reason to discredit her testimony.

The ALJ also noted that the plaintiff was referred to a pain management program at Kaiser in 2006, but "despite her complaints of severe pain, claimant did not receive treatment from a pain specialist for several more years."  AR 31.  The Ninth Circuit has prohibited rejecting a claimant's symptom testimony because of lack of treatment "when the record establishes that the claimant could not afford it."  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (citing *Smolen*, 80 F.3d at 1284).  SSR 96-7p also requires that the ALJ "not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or

United States District Court
Northern District of California

1  pursue regular medical treatment without first considering any explanations that the individual

2  may provide," and lists inability to afford treatment or access to free or low-costs medical services

3  as possible explanations.  SSR 96-7P, 1996 WL 374186 (July 2, 1996).[12]  The Court finds the

4  record corroborates plaintiff's explicit explanation that she could not access pain management

5  treatment sooner because she had to "clear the public facility's over-burdened waitlist," and her

6  implied argument that she could not afford pain management treatment.  Pl.'s Mot. at 27.  Plaintiff

7  had not had any income for many years prior to her hearing.  After she lost her insurance with

8  Kaiser Permanente, Dr. Cheng referred plaintiff to SFGHPMC, but she had to pass through their

9  long waitlist until she could access pain management treatment there.  The ALJ failed to consider

10  plaintiff's inability to afford or access the pain management treatment as an explanation for her

11  delay in receiving treatment from the pain specialist.

12        Finally, the ALJ again referred to the notation on one visit to Dr. Brody about plaintiff's

13  "incongruent affect" when describing her pain, as well as an early reference to a "large functional

14  component to her pain."  AR 31.  The ALJ "must state specifically which symptom testimony is

15  not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284.  Here

16  the ALJ does not specify what part of plaintiff's symptom testimony is not credible, and there is

17  no explanation about how these facts undermine plaintiff's credibility.  The ALJ seems to suggest

18  that plaintiff was malingering, but neither Dr. Brody nor Dr. Perez-Neira, who made the notation,

19  drew any negative inferences from plaintiff's "incongruent affect," and no physician or treatment

20  provider anywhere found that plaintiff was malingering at any time.

21        The Court finds that the ALJ's stated reasons do not satisfy the requirement of specific,

22  clear, and convincing evidence necessary to dismiss plaintiff's testimony.  Thus, the ALJ

23  improperly rejected plaintiff's testimony about the intensity, persistence, and limiting effects of

24  her symptoms in calculating her RFC.

25

26

27  ―――――――――――――――
[12] Although SSRs do not have the same force and effect as statutes or regulations, they are binding

28  on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

United States District Court
Northern District of California

### III.     Ability to Return to Previous Work and Engage in Other Types of Substantial Gainful Work

Plaintiff argues that at steps four and five the ALJ improperly relied upon part of the VE testimony based on a hypothetical presented by the ALJ that failed to include plaintiff's pain and functional limitations.  Pl.'s Mot. 32-33.  In response to the ALJ's hypothetical, the VE testified that plaintiff "could return to any of the three jobs that comprise her past relevant work" and would be able to perform the requirements of other types of work "such as route clerk…and information clerk."  AR 32, 33.  The ALJ relied on this part of the VE's testimony at both steps four and five.  Plaintiff argues that the ALJ erred in finding the plaintiff could engage in her previous work and other types of substantial gainful work.

At step four a claimant has the ability to return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demand and job duties of the occupation as generally required by employers throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61). Once the plaintiff establishes that she suffers from a severe impairment that prevents her from doing past work, the burden shifts to the Commissioner at step five to demonstrate that the plaintiff "can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner can meet this burden "in one of two ways: '(a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines[.]'"  *Id.* (citation omitted).  The grids, however, may be used only where they "completely and accurately represent a claimant's limitations."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

The ALJ initially attempted to apply the Medical-Vocational Guidelines.  He found the plaintiff not disabled under the grids, but he also found "the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations."  AR 33.  He then posed a hypothetical to the VE and relied on the VE's response to that hypothetical at steps four and five.

The ALJ's hypothetical to the VE reflected plaintiff's age, education and experience, "including the capacity to work at a light exertional level, including the ability to lift up to 10 pounds frequently, 20 pounds occasionally . . . sit up to 8 hours, stand/walk for a combined total of six of eight hours with the usual breaks."[13]   AR 121.   The ALJ's hypothetical did not include plaintiff's need to miss work four or more days a month, work shorter days, and take frequent breaks as indicated by plaintiff's physicians.   In response to this hypothetical, the VE testified that plaintiff could perform past work, and other work including route clerk and information clerk.   AR 121-122.   Subsequently, plaintiff's counsel posed other hypotheticals to the VE, adding in plaintiff's RFC limitations from assessments by Dr. Cheng, Brody, and McCall.   The VE answered that those limitations—missing an hour of work five times a month, missing work three days a month, and needing ten minute breaks every thirty minutes—would all individually render the plaintiff unemployable.   AR 123-124.

Plaintiff argues the VE's testimony in response to the ALJ's hypothetical is unreliable.   "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).   "If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).   Hypothetical questions posed to a vocational expert must include a claimant's subjective impairments unless the ALJ has clear and convincing reasons for discrediting the claimant's testimony.   *See Gallant*, 753 F.2d at 1456; *see also Thomas*, 278 F.3d at 959.   Here, the Court finds that the ALJ's hypothetical did not reflect all of the claimant's functional limitations.   First, as previously discussed the ALJ should have assigned greater weight to the treating and examining physician's opinions in forming his RFC.   Plaintiff's treating physician Dr. Cheng opined that the plaintiff would have to work no more than six hours a day, need to miss four days of work a month, and need to take ten minute breaks every thirty minutes.

---

[13] The ALJ appears to have misstated the ME's RFC, which said plaintiff could sit for 6 out of 8 hours a day.   AR 114.   Because the Court finds the ALJ should not have relied on the ME's RFC, the Court need not address this discrepancy.

AR 650-652.   Treating physician Dr. Brody opined that she would have to take breaks every twenty minutes, work seven hours a day or less at least five days a month, and miss at least five days of work a month.  *Id.* at 744-745.  Examining physician Dr. McCall opined plaintiff would need breaks after forty five minutes of sitting, have difficulty maintaining any job requiring her to work eight hours per day, five days per week, and need to take off a few days of work each month. *Id.* at 646.   These opinions should have formed the basis for the ALJ's hypothetical.  Second, "[b]ecause plaintiff's allegations of persistent disabling pain are supported by the medical evidence in this case and the ALJ had no clear or convincing reasons for rejecting such claims, claimant's pain should have formed a part of the ALJ's question to the expert."  *Gallant*, 753 F.2d at 1456.  Because the ALJ's hypothetical was not complete, the Court finds the VE testimony based on that hypothetical is not reliable evidence.  The ALJ erred in relying on that testimony to find that plaintiff could perform past work and other substantial gainful work.

## IV.     The Credit-as-True Doctrine

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine.   The Ninth Circuit has recently reaffirmed the validity of the doctrine.  *See Garrison*, 759 F.3d at 999 (describing the credit-as-true doctrine as "settled").   Under the doctrine, a court has the discretion to remand for payment of benefits where (1) the record has been fully developed, and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide sufficient reasons for rejecting the medical or subjective evidence; and (3) the ALJ would be required to find the claimant disabled on remand if the improperly rejected evidence were credited as true.  *Id.* at 1020.  Even where each of these conditions is met, the court retains the discretion to remand for further proceedings "when the record as a whole creates serious doubt over whether the claimant is, in fact, disabled[.]"  *Id.* at 1021.  Where there is no remaining issue that must be resolved and it is clear from the record that plaintiff is entitled to disability benefits, the Ninth Circuit has found it is an abuse of discretion to remand for further administrative proceedings rather than for an immediate award of benefits.  *Benecke*, 379 F.3d at 596.

20

While the credit-as-true doctrine controls in this Circuit, there is conflicting authority on its application. *Garrison* states that the third factor—whether the record requires a finding of disability if the rejected testimony is credited—incorporates the question of whether there are any outstanding issues that must be resolved before a determination of disability can be made. *See id.* at 1020 n.26. In *Garrison* the Ninth Circuit stated that the inquiry is whether, *after* crediting the testimony, anything must be resolved in order to determine the claimant's disability. *See id.* A few months later, the Ninth Circuit held that a court must determine that there are no outstanding issues *before* crediting the rejected testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, No. 12-35944, 2014 WL 7332774, at *8 (9th Cir. Dec. 24, 2014).

Here, under either approach there are no outstanding issues that need to be determined. The Commissioner only raises two arguments for a remand for further proceedings, neither of which identifies an issue that must be determined. First, the Commissioner argues that rheumatologist Dr. Birnbaum must be required either to assess functional limitations for plaintiff or find plaintiff disabled because he is a specialist. Def's Cross-Mot. at 15. The Commissioner cites no authority and the Court can find no authority for her proposition that an RFC assessment or a disability finding must come from a specialist.

Second, the Commissioner argues that plaintiff's testimony about her pain alone cannot be conclusive evidence of disability. Def.'s Cross-Mot. at 15. The Court agrees, but this argument does not raise an issue for further determination. Plaintiff's finding of disability is not based on her testimony alone, but is based upon a proper determination of plaintiff's RFC based on her MDIs in combination, and the VE's testimony that a person with plaintiff's RFC cannot perform past or other substantial gainful work.

The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true. *See, e.g.*, *Garrison*, 759 F.3d at 1022; *Lingenfelter*, 504 F.3d at 1041; *Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1401. In these cases the claimant's counsel presented an alternative hypothetical to the VE that included the claimant's limitations and RFC as described by medical opinion or the claimant's testimony.

21

In each case the VE responded to that hypothetical by saying that a person with those limitations would be disabled.  And in each case, the Court found that based on that evidence, the ALJ would be required to find the claimant disabled on remand if the improperly rejected evidence were credited as true.  Here, plaintiff's counsel posed hypothetical questions to the VE that reflected plaintiff's testimony and the opinions of Drs. Cheng, Brody, and McCall as to plaintiff's RFC, and in response the VE answered that a person with such an RFC would be unable to work at plaintiff's previous work or any other work.  That testimony provides adequate basis for the Court to conclude that plaintiff is disabled without remanding for further proceedings to re-determine her RFC.[14]  *See Garrison*, 759 F.3d at 1022.

In this case the record has been fully developed and further ALJ proceedings would serve no useful purpose.  The ALJ failed to provide sufficient reasons for discrediting the medical opinions of all the treating and examining physicians, and plaintiff's testimony.  If this evidence were credited as true, then the physicians' RFC assessments have already been found by the VE to prevent plaintiff from securing past work or other substantial gainful work.  After considering the Commissioner's arguments, the Court sees no basis for serious doubt in the record that Sorrell is disabled.  The plaintiff would have to be found disabled under Title II and Title XVI of the Social Security Act, and thus an award of benefits is appropriate.  Moreover, remand for benefits is appropriate here where Plaintiff first applied for benefits over four years ago and has already experienced lengthy, burdensome litigation.  *See Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001).

///

///

---

[14] The near unanimity of treating and examining physicians' RFCs also demonstrates the lack of usefulness of another RFC assessment.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate payment of benefits.

**IT IS SO ORDERED**.

Dated: March 13, 2015

_____
SUSAN ILLSTON
United States District Judge